|  |  |
|---|---|
| MODERN AUTOMOTIVE NETWORK, LLC, <br><br>Plaintiff, <br><br>vs. <br><br>EASTERN ALLIANCE INSURANCE GROUP, EASTERN ALLIANCE INSURANCE COMPANY, EASTERN ADVANTAGE ASSURANCE COMPANY, ALLIED EASTERN INDEMNITY COMPANY <br><br>Defendants. | **COMPLAINT** <br>(Jury Trial Demanded) |

COMES NOW Plaintiff Modern Automotive Network, LLC, by and through counsel, complaining of the defendants says and alleges as follows:

## PARTIES

1. Plaintiff Modern Automotive Network, LLC ("Modern") is a North Carolina company with a principal place of business in Forsyth County.

2. Defendant Eastern Alliance Insurance Group is a company based in Pennsylvania with member companies Eastern Alliance Insurance Company, Employers Security Insurance Company, Allied Eastern Indemnity Company and Eastern Advantage Assurance Company.

3. Defendant Eastern Alliance Insurance Company is a company registered with the North Carolina Department of Insurance as having a principal place of business in Pennsylvania.

4. Defendant Eastern Advantage Assurance Company is a company registered with the North Carolina Department of Insurance as having a principal place of business in

Pennsylvania.

5. Defendant Allied Eastern Indemnity Company is a company registered with the North Carolina Department of Insurance as having a principal place of business in Pennsylvania.

6. All four defendant insurance companies will be collectively referred to as "Eastern".

## THE POLICY AND ARRANGEMENT BETWEEN MODERN AND EASTERN

7. Eastern issued to Modern a Workers Compensation and Employers Liability Insurance Policy, Policy Number 01-0000089723-00 (the "Policy"), with Policy Period 1-1-15 to 1-1-16. Ex 1.

8. Modern and Eastern also entered into a Deductible Reimbursement and Security Agreement Workers' Compensation Large Deductible Plan ("Deductible Agreement"). Ex 2.

9. The Policy had a deductible of $250,000 per accident and $425,000 annual aggregate, per the Policy's Workers' Compensation and Employers Liability Insurance Policy Large Deductible Endorsement (form WC 99 06 02).

10. To insure that Modern could pay for the high deductible should it be needed, Modern provided an Irrevocable Standby Letter of Credit, number IS0265019U, with Wells Fargo in the amount of $225,000 for the benefit of Eastern Alliance Insurance Company, Allied Eastern Indemnity Company, and Eastern Advantage Assurance (the "Letter of Credit"). Ex 3.

11. Eastern was responsible for adjusting Modern's workers' compensation claims during the policy period.

12. Where an insurance contract places the duty to defend and settle on the insurer to the exclusion of the insured, a duty of good faith assures that the insurer will take the insured's interest in due consideration when defending and settling the claim.

2

13. Where a contract confers on one party discretionary power affecting the rights of another, the discretion must be exercised in a reasonable manner based upon good faith and fair dealing.

14. Eastern took on the responsibility of adjusting and defending Modern's workers' compensation claims. Eastern had a duty to discharge that duty in good faith and fairly, giving due regard to Modern's interests.

15. Eastern was required in defending Modern to defend and, if possible, settle claims at amounts that were as favorable to Modern as possible, considering risks and claim values, without regard to whether any claim would be paid within Modern's deductible, within Eastern's coverage or excess coverage, if applicable.

16. Before the end of 2015, Modern communicated that it would not continue using Eastern to provide its workers' compensation coverage and administer its workers' compensation claims for the next policy year.

17. Three cases that Eastern handled for Modern, discussed below, demonstrate that Eastern had a business practice of handling Modern's claims in a way that put Eastern's interests ahead of Modern's. Eastern failed to effectuate a resignation from a claimant, because the resignation did not benefit Eastern, even though it was crucial for Modern. Eastern offered one pro se claimant nearly Modern's entire deductible even though the claim did not warrant even half that amount. Eastern offered the exorbitant amount to the pro se injured worker to eliminate any risk to Eastern and ongoing expense of adjusting the claim, strategically passing the entire burden of the claim to Modern. Finally, on the third claim, Eastern concocted a purported side deal with a claimant to mislead the North Carolina Industrial Commission into approving a claim by making the settlement seem more favorable to the claimant than it was. When the plaintiff's attorney

backed out of the side deal, Eastern billed Modern for the amount of the side deal minus some portion of the failed side deal that the plaintiff's attorney allegedly agreed to absorb via a reduction of his or her fee.

18. Eastern has attempted to conceal its wrongdoing by preventing Modern from obtaining a copy of its files from Eastern or from counsel who represented Modern.

19. In the body of this Complaint and the exhibits Modern will redact the injured worker / employee identities to protect their privacy.

### EASTERN FAILS TO PROTECT MODERN WHEN ADJUSTING MR. G'S CLAIM

20. Modern first encountered difficulties with Eastern's claims handling in connection with a claim made by Mr. G. Mr. G. was injured on April 12, 2015. To avoid disclosure of health information the Complaint will not go into detailed specifics about Mr. G's injuries. However, he was treated per the Workers Compensation Act for his injuries.

21. Mr. G. Was pro se.

22. Mr. G's claim settled.

23. Prior to settlement, Modern instructed Eastern to make sure that a release and resignation from Mr. G was a part of the settlement to protect Modern.

24. Eastern did not discuss the specific terms or figures of proposed settlements with Modern before settling Mr. G's claim.

25. Eastern did not inform Modern that the case had settled or the terms of the settlement.

26. Modern did not learn of the settlement until it contacted Eastern concerning a large charge on a monthly statement.

27. Eastern failed to obtain a release and resignation from Mr. G.

4

28. Mr. G still works for Modern.

29. Due to Mr. G's age and health, Modern bears a heightened risk of future claims from Mr. G.

30. Eastern has refused to provide its and Modern's file to Modern on Mr. G's claim, despite a request.

## EASTERN FAILS TO PROTECT MODERN WHEN ADJUSTING MR. H'S CLAIM

31. A Modern employee who will be referred to as Mr. H was injured on October 14, 2015. To avoid disclosure of health information the Complaint will not go into detailed specifics about Mr. H's injuries. However, he was treated per the Workers Compensation Act for his injuries.

32. Mr. H was pro se.

33. The week of August 22, 2016 Modern's in-house counsel spoke with Eastern's adjuster on Mr. H's claim, Jeff Berger. Modern conveyed that it was not interested in settling Mr. H's claim because Mr. H was fulfilling a productive position at Modern in his light-duty role, and that he was a productive and valued employee. Mr. Berger indicated that he understood and would continue the course of Mr. H treating for his injuries. In fact, Mr. Berger scheduled a surgery for Mr. H and a post-operative physician visit.

34. On August 30, 2016 Mr. Berger called Modern's in-house counsel and informed him that in talking with Mr. H the topic of settlement had come up. Mr. Berger further advised that he thought a $200,000 to $225,000 settlement would be reasonable.

35. In true fact, Mr. Berger, on his own and with no prompting from Mr. H, brought up settlement.

36. In response, Modern's counsel expressly stated that Modern would not be interested in a settlement of that amount. He reiterated Mr. H's value to Modern and stated that Modern would only be interested in a settlement of well below $200,000 for Mr. H's claim, in the range of $75,000.

37. Mr. Berger stated in response that the North Carolina Industrial Commission would not approve a settlement in the range proposed by Modern. Modern responded by asking Mr. Berger to seek advice from a North Carolina attorney about that concern, but Mr. Berger declined to do so.

38. Upon information and belief, Mr. H and Mr. Berger had already reached or nearly reached a settlement prior to August 30, 2016, and Mr. Berger concealed that information from Modern.

39. Mr. Berger is not an attorney licensed in North Carolina.

40. Upon information and belief, Mr. Berger also does not have an active license as an insurance adjuster in North Carolina.

41. On September 1, 2016, Mr. Berger emailed Modern and stated, "Mike, I have successfully been able to settle [Mr. H's] file on a Full & Final clincher today for $200,000. I have also withdrawn approval of the surgery that was scheduled to take place 9/6/16."

42. In the same email, Mr. Berger explained that Mr. H's file was being sent to an attorney at McAngus Goudelock & Courie ("McAngus") in Raleigh "to draw up the settlement agreement & the Resignation and release (sic) for you."

43. Eastern settling Mr. H's claim for $200,000 was an excessive payment, against Modern's instructions and interests, and was solely for the benefit of Eastern at the expense of Modern.

6

44. The reason that Eastern settled Mr. H's claim for $200,000 is because the settlement eliminates any exposure Eastern had on Mr. H's claim and eliminates any expense Eastern would incur in ongoing claims handling. It pushed the entire risk and expense of Mr. H's claim to Modern, as the settlement was within Modern's deductible amount.

45. After Eastern reached the settlement with Mr. H, Modern objected to it. Modern informed McAngus that it objected to the settlement. However, Eastern pushed the settlement through, obtaining an approved "clincher" from the Industrial Commission.

## EASTERN REFUSES TO COMMUNICATE WITH MODERN ABOUT MR. H'S CLAIM AND OBSTRUCTS MODERN'S ATTORNEY FROM COMMUNICATING WITH MODERN ABOUT MR. H'S CLAIM

46. The clincher for Mr. H's claim was prepared by an attorney at McAngus.

47. McAngus represented as clients Modern and Eastern in connection with the preparation and filing of the clincher.

48. Eastern has or intends to charge Modern for amounts charged by McAngus for the legal services connected with the preparation and filing of the clincher.

49. To better understand Eastern's thought process and rationale Modern, in writing, requested its file regarding Mr. H. from McAngus multiple times. Those requests are Exhibits 4 through 7.

50. McAngus has not provided Modern's file to Modern.

51. McAngus has not responded to Modern related to any of the correspondence.

52. Modern is entitled to a copy of its file from McAngus. See, e.g., RPC 178 and 245.

53. Upon information and belief Eastern has instructed McAngus, the law firm who represented Modern on Mr. H's case, not to speak to Modern about Mr. H's case.

54. Eastern has not provided its own file on Mr. H's case to Modern either, despite a request.

## EASTERN ENGAGES AN ATTORNEY NOT LICENSED IN NORTH CAROLINA IN CONNECTION WITH MODERN'S CLAIM AGAINST EASTERN IN NORTH CAROLINA

55. Although Eastern has not provided its file to Modern and has obstructed McAngus from doing the same, Eastern did provide its and Modern's file, apparently, to a law firm in Pennsylvania.

56. On December 7, 2016, Modern's counsel received a letter from an attorney in Pennsylvania, Thomas French. That letter avers that Eastern handled Mr. H's claim reasonably and consistent with North Carolina law and reserves Eastern's rights under "applicable law." Ex 8.

57. Upon information and belief, and based on the attached search at the North Carolina State Bar web site and his firm's web biography, Mr. French is not an attorney licensed in North Carolina. Ex 9.

## EASTERN FAILS TO PROTECT MODERN WHEN ADJUSTING MR. S'S CLAIM

58. Eastern also mishandled the case of Mr. S. Mr. S. was injured on February 5, 2015. To avoid disclosure of health information the Complaint will not go into specifics about Mr. S's injuries. However, he was treated per the Workers Compensation Act for his injuries. Eventually Eastern informed Modern that it had reached a settlement, pending Industrial Commission approval, of Mr. S's case.

59. On October 18, 2016 Eastern's counsel informed Modern that the settlement was for $11,699 of money in addition to the amounts paid for treatments to date. $11,699 was the amount of the Medicare Set Aside required by CMS. Additionally, Eastern, on behalf of Modern, would waive a $40,000 subrogation lien that had accrued due to the costs of Mr. S's treatments

8

against a third party tortfeasor, so Mr. S could obtain all of his $100,000 settlement with the tortfeasor. Significantly, Eastern's counsel told Modern that there was a side deal whereby Mr. S would pay back to Modern the $11,699 of additional money that Modern was to advance after the Industrial Commission approved the settlement. Implicitly, the Industrial Commission would not be informed of this side deal whereby money from the injured worker, Mr. S, would flow back to Modern.

60. The agreed repayment was a critical element of the bargain necessary to secure Modern's lack of objection to settlement and waiver of its subrogation interest.

61. The clincher for the settlement Mr. S's claim was prepared by an attorney at McAngus.

62. McAngus represented clients Modern and Eastern in connection with the preparation and filing of the clincher.

63. Eastern has or intends to charge Modern for amounts charged by McAngus for the legal services connected with the preparation and filing of the clincher.

64. Eastern then sent a bill in December to Modern that sought compensation in connection with Mr. S's case in excess of what Modern was expecting.

65. Modern questioned the bill's accuracy.

66. In response to Modern's questions, on December 14, 2016, Mr. Berger emailed Modern, stating, "The 'payback' situation did not work out, so there won't be one."

67. When Modern pressed Eastern for further explanation, Mr. Berger explained that Mr. S's attorney did not understand the side deal or had backed out of the side deal, and that therefore Eastern had reached a resolution whereby Modern and/or Eastern would pay $5,849.50 of additional money to Mr. S.

9

68. Eastern has or intends to charge Modern for the $5,849.50 that is a result of the failed side deal

69. Modern had never been informed that the side deal had fallen through and that Modern would be responsible for the consequences of the side deal falling through.

70. Modern would not have been informed that the side deal had fallen through had it not questioned the bill.

71. To better understand Eastern's thought process and rationale Modern, in writing, requested its file regarding Mr. S. from McAngus. Ex. 10.

72. McAngus has not provided Modern's file to Modern.

73. Modern is entitled to a copy of its file from McAngus. See, e.g., RPC 178 and 245.

74. Upon information and belief Eastern has instructed McAngus, the law firm who represented Modern on Mr. S's case, not to speak to Modern about Mr. S's case.

75. Eastern has not provided its file on Mr. S's case to Modern either despite a request.

76. On January 12, 2016, counsel for Modern wrote to Eastern request a copy of the file for Mr. S, Mr. H., and Mr. G and never received a response. (Ex 11.)

## EASTERN WITHOUT FURTHER COMMUNICATION MAKES A CLAIM ON THE LETTER OF CREDIT TO OBTAIN AMOUNTS MODERN LEGITIMATELY DISPUTES

77. On September 28, 2016, counsel for Modern wrote to Eastern providing a narrative substantially similar to what is described above. Moreover, Modern provided Eastern notice of North Carolina claims handling / unfair trade practices law and instructed Eastern that the payment of $200,000 was disputed and that Eastern was not to make a claim on the Letter of Credit. Ex 12.

78. Eastern never responded to Exhibit 12 except arguably the letter from Mr. French referenced above.

10

79. Despite knowing that Modern disputed the amounts Eastern is claiming against it, Eastern made a claim on the Letter of Credit on December 29, 2016 in the amount of $202,374.80, plus a draw fee of $535.94. Exhibit 13.

### FIRST CAUSE OF ACTION
### BREACH OF CONTRACT

80. Plaintiff re-alleges and incorporates herein by reference all prior allegations as though fully set forth herein.

81. A valid contract existed between Modern and Eastern.

82. Modern completed all conditions precedent and obligations under the contract.

83. Every contract in North Carolina includes a covenant of good faith and fair dealing.

84. Eastern breached the contract, including the covenant of good faith and fair dealing.

85. Eastern breached the contract by, inter alia:

   a. Settling workers' compensation claims via a clincher without first confirming if the employer wanted a resignation and release from the employee;

   b. Settling workers' compensation claims via a clincher without obtaining a resignation and release from the employee;

   c. Not providing the employer a copy of the approved clincher;

   d. Overpaying Mr. H, a pro se plaintiff whom Modern was able to provide suitable a light duty position and when Modern felt confident it could provide Mr. H. a position of suitable employment following his treatment, when the payment was funded entirely from Modern's deductible;

   e. Refusing to provide its insured with a copy of its file;

   f. Instructing McAngus not to give Modern a copy of its file;

   g. Not having claims reviewed by a North Carolina attorney prior to settling;

11

h. Having claims reviewed by attorneys not licensed in North Carolina;

i. Not telling Modern that the settlement of Mr. S's claim did not work out and simply agreeing to another settlement amount without consulting Modern, not enforcing the settlement of Mr. S' claims, and then taking the position that Modern is responsible for the difference, when the payment was coming entirely from Modern's deductible;

j. Entering into an unenforceable side deal with Mr. S that left Modern with no recourse when Mr. S did not follow through;

k. Placing Eastern's interests above Modern's interests by settling Mr. H's claim near the maximum of Modern's deductible to eliminate any risk and exposure to Eastern and shifting the entire risk to Modern, and exposing Modern to paying an inflated amount for Mr. H's claim;

l. Making a demand on a Letter of Credit for amounts that Eastern was not entitled to obtain.

86. As a direct, foreseeable and proximate result of the aforesaid unfair and deceptive acts and practices, Modern has sustained damages in excess of $25,000 due to attorney fees, inflated settlement amounts due under Modern's deductible, compensation paid to Mr. G as a result of Eastern not getting a release and resignation, future workers compensation benefits that may become due to Mr. G, the amount lost by Modern when the side deal associated with Mr. S's claim fell through, and costs, loss of use and interest on the Letter of Credit that Eastern called.

**SECOND CAUSE OF ACTION**
NEGLIGENT CLAIMS HANDLING

87. Plaintiff re-alleges and incorporates herein by reference all prior allegations as though fully set forth herein.

88. Eastern owed a duty to Modern to handle Modern's claims reasonably.

89. Based upon the factual allegations above, Eastern breached the standard of care in the insurance industry for the handling of workers' compensation claims in North Carolina in the insurance industry by, at a minimum, the following:

   a. Settling workers' compensation claims via a clincher without first confirming if the employer wanted a resignation and release from the employee;

   b. Settling workers' compensation claims via a clincher without obtaining a resignation and release from the employee;

   c. Not providing the employer a copy of the approved clincher;

   d. Overpaying Mr. H, a pro se plaintiff whom Modern was able to provide suitable a light duty position and when Modern felt confident it could provide Mr. H. a position of suitable employment following his treatment, when the payment was coming from Modern's deductible;

   e. Refusing to provide its insured with a copy of its file;

   f. Instructing McAngus not to give Modern a copy of its file;

   g. Not having claims reviewed by a North Carolina attorney prior to settling;

   h. Having claims reviewed by attorneys not licensed in North Carolina;

   i. Not telling Modern that the settlement of Mr. S' claim did not work out and simply agreeing to another settlement amount without consulting Modern, not enforcing the settlement of Mr. S' claims, and then taking the position that Modern is responsible for the difference, when the payment was coming from Modern's deductible;

13

j.  Entering into an unenforceable side deal with Mr. S that left Modern with no recourse when Mr. S did not follow through;

k.  Placing Eastern's interests above Modern's interests by settling Mr. H's claim near the maximum of Modern's deductible to eliminate any risk and exposure to Eastern and shifting the entire risk to Modern, and exposing Modern to paying an inflated amount for Mr. H's claim;

l.  Making a demand on a Letter of Credit for amounts that Eastern was not entitled to obtain.

90. As a direct, foreseeable and proximate result of the aforesaid unfair and deceptive acts and practices, Modern has sustained damages in excess of $25,000 due to attorney fees, inflated settlement amounts due under Modern's deductible, compensation paid to Mr. G as a result of Eastern not getting a release and resignation, future workers compensation benefits that may become due to Mr. G, the amount lost by Modern when the side deal associated with Mr. S's claim fell through, and costs, loss of use and interest on the Letter of Credit that Eastern called.

**THIRD CAUSE OF ACTION**
UNFAIR AND DECEPTIVE TRADE PRACTICES
N.C.G.S. § 58-63-1 et seq. and N.C.G.S. § 75-1.1 et seq.

91. Plaintiff re-alleges and incorporates herein by reference all prior allegations as though fully set forth herein.

92. At all relevant times, Eastern has been engaged in the business of insurance in the State of North Carolina.

93. The business of insurance and all conduct complained of herein is in or affecting commerce.

14

94. Eastern had a duty to act in good faith when handling the claims of Mr. G., Mr. H. and Mr. S. for Modern.

95. While handling the claims for Mr. G., Mr. H. and Mr. S. for Modern, Eastern had a statutory duty to engage in fair settlement practices under N.G. Gen. Stat. § 58-63-15(11).

96. Based upon the factually allegations above, Eastern violated its duty of good faith and violated the following statutory duties set out in N.C. Gen. Stat. §58-63-15(11):

   a. Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

   b. Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;

   c. Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

   d. Failing to promptly settle claims where liability has become reasonably clear under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage;

   e. Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

97. Based upon the factually allegations above, Eastern has engaged in the prohibited practices with such a manner and frequency as to indicate a general business practice in the handling of such claims.

98. The aforesaid acts, omission and conduct of Eastern, as violations of N.C. Gen. Stat. §58-63-15(11), constitute unfair or deceptive acts and practices in violation of N.C. Gen. Stat.

§ 75-1.1.

99. As a direct, foreseeable and proximate result of the aforesaid unfair and deceptive acts and practices, Modern has sustained damages in excess of $25,000 due to attorney fees, inflated settlement amounts due under Modern's deductible, compensation paid to Mr. G as a result of Eastern not getting a releasing and resignation, future workers compensation benefits that may become due to Mr. G, the amount lost by Modern when the side deal associated with Mr. S's claim fell through, and costs, loss of use and interest on the Letter of Credit that Eastern called.

100. Eastern is liable to Modern for the aforesaid damages after trebling pursuant to N.C. Gen. Stat. § 75-16.

**FOURTH CAUSE OF ACTION**
Violation of N.C.G.S. § 75-1.1 et seq.

101. Plaintiff re-alleges and incorporates herein by reference all prior allegations as though fully set forth herein.

102. At all relevant times, Eastern has been engaged in the business of insurance in the State of North Carolina.

103. The business of insurance and all conduct complained of herein is in or affecting commerce.

104. The conduct complained of herein is unfair, deceptive, oppressive, rude, aggravated, intentional, the exercise of unequal bargaining power, and fraudulent.

105. As such, Eastern has violated N.C. Gen. Stat. § 75-1.1.

106. As a direct, foreseeable and proximate result of the aforesaid unfair and deceptive acts and practices, Modern has sustained damages in excess of $25,000 due to attorney fees, inflated settlement amounts due under Modern's deductible, compensation paid to Mr. G as a result of Eastern not getting a releasing and resignation, future workers compensation benefits that may

become due to Mr. G, the amount lost by Modern when the side deal associated with Mr. S's claim fell through, and costs, loss of use and interest on the Letter of Credit that Eastern called.

107. Eastern is liable to Modern for the aforesaid damages after trebling pursuant to N.C. Gen. Stat. § 75-16.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays the Court for the following relief:

1. That Plaintiff have and recover judgment against Defendants, jointly and severally, for compensatory damages sustained, plus pre-judgment and post-judgment interest as allowed by law.

2. That Defendants' contact be declared by the Court to be in violation of N.C. Gen. Stat. § 75-1.1 and that the actual damages to Plaintiff and against Defendants be trebled pursuant to N.C. Gen. Stat. § 75-16.

3. That the costs of this action be taxed against Defendants, including an award of attorney's fees to Plaintiff's counsel, pursuant to N.C. Gen. Stat. § 75-16.1.

4. For such other and further relief as the Court deems just and proper.

5. Plaintiff demands a trial by jury on all issues so triable.

This the 20th day of January, 2017.

Andrew L. Fitzgerald
N.C. State Bar No. 31522
D. Stuart Punger
N.C. State Bar No. 35517
FITZGERALD LITIGATION
119 Brookstown Avenue, Suite 402
Winston-Salem, NC 27101
Telephone: 336-793-4365
Fax: 336-793-4696

17