IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| MODERN AUTOMOTIVE NETWORK, LLC, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | 1:17CV152 |
| EASTERN ALLIANCE INSURANCE GROUP, EASTERN ALLIANCE INSURANCE COMPANY, EASTERN ADVANTAGE ASSURANCE COMPANY, and ALLIED EASTERN INDEMNITY COMPANY, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

This matter is before the Court on Defendant's Motion to Dismiss Plaintiff's Complaint. (ECF No. 9.) Plaintiff, Modern Automotive Network, LLC, initiated this action on January 20, 2017, in the Superior Court of Forsyth County, North Carolina, alleging state-law claims of breach of contract, negligent claims handling, and two claims of unfair and deceptive trade practices. (ECF No. 4.) Defendants, Eastern Alliance Insurance Group ("EAIG"), Eastern Alliance Insurance Company ("EAIC"), Eastern Advantage Assurance Company ("EAAC"), and Allied Eastern Indemnity Company ("AEIC"), removed the action to this Court. (ECF No. 1.) The Court has jurisdiction to hear this matter pursuant to 28

U.S.C. § 1332. (*Id.* ¶ 3.) For the reasons stated below, the motion to dismiss presently before the Court will be granted in part and denied in part.

I.   BACKGROUND

This action concerns an insurance dispute arising out of two agreements between these parties.[1] (*See generally* ECF No. 4.) Defendants, whom Plaintiff discusses collectively as a single entity in the Complaint, issued Plaintiff "a Workers Compensation and Employers Liability Insurance Policy" (the "Policy"); and the parties "entered into a Deductible Reimbursement and Security Agreement Workers' Compensation Large Deductible Plan" (the "Deductible Agreement"). (*Id.* ¶¶ 7, 8.) The Policy "had a deductible of $250,000 per accident and [a] $425,000 annual aggregate." (*Id.* ¶ 9.) "To insure that [Plaintiff] could pay for the high deductible," Plaintiff provided Defendants with "an Irrevocable Standby Letter of Credit . . . in the amount of $225,000 for the benefit of" EAIC, AEIC, and EAAC. (*Id.* ¶ 10.) During all times relevant to this dispute, Defendants were "responsible for adjusting [Plaintiff's] workers' compensation claims." (*Id.* ¶ 11.)

Plaintiff alleges that Defendants mishandled claims made by three of Plaintiff's employees: Mr. G, Mr. H, and Mr. S.[2] (*Id.* ¶¶ 20–79.) Mr. G was injured in April 2015, and brought a claim that Defendants settled. (*Id.* ¶¶ 20–22.) Prior to settlement, Plaintiff instructed [Defendants] to obtain a "release and resignation" as part of the settlement, but Defendants failed to do so. (*Id.* ¶¶ 23, 27.) Defendants also failed to discuss "the specific

---

[1] The Court accepts as true all well-pleaded allegations in the Complaint. *See Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

[2] Plaintiff redacts the identity of these employees in the Complaint. (ECF No. 4 ¶ 19.)

2

terms or figures of proposed settlements" with Plaintiff prior to settling, and after settlement, Defendants failed to inform Plaintiff "that the case had settled or the terms of the settlement." (*Id.* ¶¶ 24, 25.) Further, Defendants have refused to provide its file and Plaintiff's file to Plaintiff on Mr. G's claim. (*Id.* ¶ 30.) Plaintiff alleges that it "bears a heightened risk of future claims from Mr. G" because of "Mr. G's age and health." (*Id.* ¶ 29.)

Mr. H was injured in October 2015. (*Id.* ¶ 31.) After this injury, Plaintiff communicated to Defendants that Plaintiff "was not interested in settling Mr. H's claim." (*Id.* ¶ 33.) Defendants' adjuster on Mr. H's claim, Jeff Berger ("Mr. Berger"), nevertheless suggested Plaintiff settle the claim for an amount between $200,000 and $225,000. (*Id.* ¶¶ 34, 35.) Plaintiff's counsel "expressly stated that [Plaintiff] would not be interested in a settlement of that amount" and further "stated that [Plaintiff] would only be interested in a settlement of well below $200,000 for Mr. H's claim, in the range of $75,000." (*Id.* ¶ 36.) Mr. Berger subsequently informed Plaintiff that he had settled Mr. H's claim for $200,000, over Plaintiff's objections. (*Id.* ¶¶ 41, 45.) Plaintiff contends that Defendants' "settling Mr. H's claim for $200,000 was an excessive payment, against [Plaintiff's] instructions and interests, and was solely for the benefit of [Defendants] at the expense of [Plaintiff]." (*Id.* ¶ 43.) Defendants and their attorneys have refused to provide Plaintiff with Plaintiff's files regarding Mr. H's claim, and Plaintiff alleges that Defendants have instructed their attorneys to not communicate with Plaintiff about Mr. H's case. (*Id.* ¶¶ 47, 50–54.)

Mr. S was injured in February 2015 and was subsequently treated for his injuries. (*Id.* ¶ 58.) Later, Defendants informed Plaintiff that Defendants had reached a settlement with Mr. S, "for $11,699 of money in addition to the amounts paid for treatments to date," pending

3

the approval of the North Carolina Industrial Commission ("Industrial Commission"). (*Id.* ¶¶ 58, 59.) As part of the settlement, Defendants' counsel told Plaintiff that there was "a side deal whereby Mr. S would pay back to [Plaintiff] the $11,699 of additional money that [Plaintiff] was to advance after the Industrial Commission approved the settlement." (*Id.* ¶ 59.) Defendants later informed Plaintiff that the "side deal" did not "work out" because "Mr. S's attorney did not understand the side deal or had backed out of the side deal, and that therefore [Defendants] had reached a resolution whereby [Plaintiff] and/or [Defendants] would pay $5,849.50 of additional money to Mr. S." (*Id.* ¶¶ 64–67.) Defendants have charged or intend to charge Plaintiff "for the $5,849.50 that is a result of the failed side deal." (*Id.* ¶ 68.) Defendants and their attorneys have refused to provide Plaintiff with Plaintiff's files regarding Mr. S's claim, and Plaintiff alleges that Defendants have instructed their attorneys to not communicate with Plaintiff about Mr. S's case. (*Id.* ¶¶ 71–76.)

In September 2016, Plaintiff's counsel "wrote to [Defendants] . . . instruct[ing] [Defendants] that [a] payment [owed] of $200,000 was disputed and that [Defendants were] not to make a claim on the Letter of Credit." (*Id.* ¶ 77.) Defendants nevertheless "made a claim on the Letter of Credit on December 29, 2016 in the amount of $202,374.80, plus a draw fee of $535.94." (*Id.* ¶ 79.) Plaintiff brought suit in January 2017, (ECF No. 4), and following removal, Defendants have filed a motion to dismiss the Complaint, (ECF No. 9).

## II.  LEGAL STANDARD

A motion made under Rule 12(b)(6) challenges the legal sufficiency of the facts in the complaint, specifically whether the Complaint satisfies the pleading standard under Rule 8(a)(2). *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). Rule 8(a)(2) requires a "short

4

and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* In other words, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is plausible when the complaint alleges sufficient facts to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Johnson v. Am. Towers, LLC*, 781 F.3d 693, 709 (4th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678).

When considering a motion to dismiss, "a [district] court evaluates the complaint in its entirety, as well as documents attached [to] or incorporated into the complaint." *E.I. du Pont de Nemours and Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011). A district court evaluating a motion brought under Rule 12(b)(6) can also "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016). Going "beyond these documents on a Rule 12(b)(6) motion . . . converts the motion into one for summary judgment," and "[s]uch conversion is not appropriate where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours and Co.*, 637 F.3d at 448.

5

## III. DISCUSSION

Defendants make four arguments in their motion. First, Defendants argue that: "Plaintiff has failed to state a plausible claim for any relief against EAIG, EAAC, or AEIC." (ECF No. 9 ¶ 5.) Second, Defendants contend that: "Plaintiff has failed to state a plausible claim for negligent claims handling because such claim is barred by the economic loss rule." (*Id.* ¶ 6.) Third, Defendants state that: "Plaintiff has failed to state a plausible claim under the UDTPA, whether based on alleged violations of § 58-63-15(11) or general allegations of unfair or deceptive practices." (*Id.* ¶ 7.) Fourth, according to Defendants: "Plaintiff's claims based on EAIC's alleged handling of Mr. G's claim, to the extent such claims are based on a 'heightened risk' of 'future' damages, are not ripe or are legally insufficient and, therefore, should be dismissed." (*Id.* ¶ 8.)

### A. Whether Plaintiff Has Stated a Plausible Claim Against EAIG, EAAC, or AEIC

The Court first turns to Defendants' argument that Plaintiff cannot state a claim for relief against EAIG, EAAC, or AEIC. Defendants, in their supporting brief, state that: "Plaintiff cannot state any plausible claim against EAIG because EAIG is not a legal entity, but a fictitious name under which EAIC, EAAC, and AEIC conduct business. This Court may properly take judicial notice of EAIG's fictitious name status, which is a matter of public record." (ECF No. 10 at 11 (citation omitted).) Additionally, Defendants contend that: "Plaintiff cannot state a plausible claim against EAIG, EAAC, and AEIC for breach of contract. . . . Neither EAIG, EAAC, nor AEIC is a party to the Policy." (*Id.*) Defendants also argue that: "To the extent that Plaintiff's contract claim can be reasonably construed as arising under the Deductible Agreement, Plaintiff still fails to state a plausible claim against EAIG,

6

EAAC, and AEIC. Although all Defendants are identified as parties to the Deductible Agreement, the purpose of the Deductible Agreement was to evidence and secure Plaintiff's obligation under the Policy to reimburse EAIC for amounts paid by EAIC, up to the deductible amount, pursuant to the Endorsement to the Policy." (*Id.* at 11–12 (emphasis removed).) "Indeed," Defendants state, "it was EAIC that drew on the [Letter of Credit] for reimbursement of the amount paid to settle Mr. H's claim . . . and it is this draw by EAIC that Plaintiff alleges was a breach of contract." (*Id.* at 12 (citation omitted).)

Plaintiff responds by contending that "[a]t this pleading phase, it is proper for [Plaintiff] to maintain claims against all named defendants." (ECF No. 16 at 3.) Plaintiff argues: "The Policy in many places purports to be in the name of EAIG, not EAIC," and that the Deductible Agreement "is expressly between [Plaintiff] and 'Eastern Alliance Insurance Group and its member companies.'" (*Id.*) Plaintiff accordingly argues that it "needs discovery to ferret the relationships between the parties." (*Id.* at 4.)

1. EAIG's Capacity to Be Sued

The Court begins by considering Defendants' argument that Plaintiff cannot state a claim to relief against EAIG on the ground that EAIG is not a legal entity. The Fourth Circuit considered the issue whether a corporation could be named as a defendant using both its legal name and its trade name in *Snowden v. CheckPoint Check Cashing*, 290 F.3d 631 (4th Cir. 2002). In *Snowden*, the plaintiffs, in their complaint, named as defendants "Elite Financial Services, Inc." and "CheckPoint Check Cashing." *Snowden*, 290 F.3d at 633 & n.1, 634 n.2. The court observed that "Elite operated . . . stores under the trade name 'CheckPoint Check Cashing.'" *Id.* at 633 n.1. The Fourth Circuit concluded that "Check Point is not a separate legal entity

7

capable of being sued," and, for the purposes of its opinion, the court "treat[ed] Elite as the sole defendant." *Id.* at 634 n.2. In this case, Plaintiff has named EAIG and the companies that conduct business under that fictitious name as separate Defendants in the Complaint, just as the plaintiff did in *Snowden.* Compare *id.*, *with* (ECF No. 1). Further, this Court takes judicial notice of the fact that EAIG is a fictitious name under which EAIC, EAAC, and AEIC conduct business. *See* Fed. R. Evid. 201. Therefore, applying *Snowden*, this Court concludes that EAIG is not a legal entity that is capable of being sued separately from EAIC, EAAC, and AEIC. *See Snowden*, 290 F.3d at 634 n.2. The Court will, therefore, dismiss EAIG as a party to this suit. *See Fournil v. Turbeville Ins. Agency, Inc.*, No. 3:07-3836-JFA-PJG, 2008 WL 11349821, at *2 (D.S.C. Dec. 30, 2008) (concluding that an entity may not "be sued separately under both its trade name and its legal or corporate name"). The Court will also direct the Clerk of Court to amend the caption in this matter so that EAIG is properly reflected as a fictitious name under which EAIC, EAAC, and AEIC conduct business.

2. <u>Whether Plaintiff Can State a Breach of Contract Claim Against EAAC and AEIC</u>

The court next turns to Defendants' argument that Plaintiff cannot state a claim against EAAC and AEIC for breach of contract.[3] As a federal court sitting in diversity, this Court applies North Carolina substantive law and federal procedural law "[u]nder the familiar *Erie* doctrine." *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014). This Court "must look first and foremost to the law of the state's highest court, giving appropriate effect

---

[3] The Complaint does not make clear whether "the contract" that has allegedly been breached is the Policy or the Deductible Agreement.

8

to all its implications." *Assicurazioni Generali, S.p.A. v. Neil*, 160 F.3d 997, 1002 (4th Cir. 1998).[4] The North Carolina Supreme Court has held that "an insurance policy is a contract and its provisions govern the rights and duties of the parties thereto." *N.C. Farm Bureau Mut. Ins. Co. v. Sadler*, 711 S.E.2d 114, 117 (N.C. 2011) (citation omitted). The court has further stated: "It is a fundamental principle of contract law that parties to a contract may bind only themselves and that the parties to the contract may not bind a third person who is not a party to the contract in absence of his consent to be bound." *Nationwide Mut. Ins. Co. v. Chantos*, 238 S.E.2d 597, 602–03 (N.C. 1977). Thus, where a defendant "was not a party to [a] contract, as a matter of law [the defendant] cannot be held liable for any breach that may have occurred." *Canady v. Mann*, 419 S.E.2d 597, 601 (N.C. Ct. App. 1992). Neither EAAC nor AEIC is a party to the Policy, however, and to the extent that the breach claim arises out of the Policy, the Court will dismiss the claim as to EAAC and AEIC.

The Court further concludes that, to the extent that the breach of contract claim arises out of the Deductible Agreement, Plaintiff has stated a plausible claim to relief against EAAC and AEIC. The Deductible Agreement states that it "is by and between [Plaintiff] . . . and Eastern Alliance Insurance Group and its member companies, Eastern Alliance Insurance Company . . . Allied Eastern Indemnity Company and Eastern Advantage Assurance Company." (ECF No. 4-2 at 1.) Thus, all Defendants are parties to the Deductible Agreement. Further, the Complaint alleges that all Defendants "breached the contract,

---

[4] Further, this Court looks to decisions of North Carolina's intermediate courts, including the North Carolina Court of Appeals, when lacking guidance from the state's highest court, *see Stoner v. N.Y. Life Ins. Co.*, 311 U.S. 464, 467 (1940) ("[F]ederal courts, under the [*Erie*] doctrine . . . must follow the decisions of intermediate state courts in the absence of convincing evidence that the highest court of the state would decide differently" (citation omitted).).

including the covenant of good faith and fair dealing." (ECF No. 4 ¶ 84.) To the extent that Plaintiff's breach of contract claim arises under the Deductible Agreement, the Court cannot, therefore, dismiss the claim as to EAAC or AEIC at this stage of the litigation.

## B. Whether Plaintiff's Claim for Negligent Claims Handling is Barred by the Economic Loss Rule

The Court next considers Defendants' argument that the economic loss rule bars Plaintiff's claim for negligent claims handling. The North Carolina Supreme Court's leading case on the economic loss rule is *N.C. State Ports Auth. v. Lloyd A. Fry Roofing Co.*, 240 S.E.2d 345 (1978), *abrogated in part on other grounds by Trs. of Rowan Tech. Coll. v. J. Hyatt Hammond Assocs., Inc.*, 328 S.E.2d 274 (N.C. 1985). *See Kelly v. Georgia-Pacific LLC*, 671 F. Supp. 2d 785, 791 (E.D.N.C. 2009) (recognizing *Ports Authority* as the North Carolina Supreme Court's "seminal opinion on the economic loss rule"). Under the economic loss rule as articulated in *Ports Authority*: "Ordinarily, a breach of contract does not give rise to a tort action by the promisee against the promisor." *Ports Authority*, 240 S.E.2d at 350. *Ports Authority* provides four exceptions to this general rule:

> (1) The injury, proximately caused by the promisor's negligent act or omission in the performance of his contract, was an injury to the person or property of someone other than the promisee. (2) The injury, proximately caused by the promisor's negligent, or wilful, act or omission in the performance of his contract, was to property of the promisee other than the property which was the subject of the contract, or was a personal injury to the promisee. (3) The injury, proximately caused by the promisor's negligent, or wilful, act or omission in the performance of his contract, was loss of or damage to the promisee's property, which was the subject of the contract, the promisor being charged by law, as a matter of public policy, with the duty to use care in the safeguarding of the property from harm, as in the case of a common carrier, an innkeeper or other bailee. (4) The injury so caused was a wilful injury to or a conversion of the property of the promisee, which was the subject of the contract, by the promisor.

10

*Id.* at 350–51 (citations omitted). Plaintiff argues that the economic loss rule does not bar its negligence claim because the claim falls into the second, third, and fourth exceptions set forth in *Ports Authority*. (ECF No. 16 at 6–7.)

The Court concludes that neither the second nor the third *Ports Authority* exception to the economic loss rule applies in this case because the Complaint does not allege that Defendants caused an injury to any person or to any property. The Court nevertheless concludes that Plaintiff has alleged a plausible claim to relief under the fourth exception. According to the Complaint, Plaintiff's negligence claim arises, in part, from the allegation that Defendants "[r]efus[ed] to provide its insured with a copy of its file." (ECF No. 4 ¶ 89(e).) This allegation, if true, would constitute conversion of Plaintiff's property under North Carolina law. *See Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 723 S.E.2d 744, 747 (N.C. 2012) ("There are, in effect, two essential elements of a conversion claim: ownership in the plaintiff and wrongful possession or conversion by the defendant."). Plaintiff has therefore alleged a plausible claim to relief for negligent claims handling, and the Court will deny Defendants' motion to dismiss this claim.

### C. Whether Plaintiff Has Alleged Plausible Unfair and Deceptive Trade Practices Claims

Defendants next contest Plaintiff's claims for unfair and deceptive trade practices. Plaintiff has alleged two causes of action for unfair and deceptive trade practices, pursuant to separate provisions of the North Carolina General Statutes. Plaintiff brings one cause of action arising from allegations that Defendants committed certain "unfair and deceptive acts and practices" enumerated in N.C. Gen. Stat. § 58-63-15(11). (ECF No. 4 ¶¶ 91–100.) Plaintiff brings a second cause of action arising from allegations that Defendants violated N.C.

11

Gen. Stat. § 75-1.1, which prohibits unfair and deceptive trade practices as a general matter, *see* N.C. Gen. Stat. § 75-1.1. (ECF No. 4 ¶¶ 101–107.) The Court will now consider whether each of these two claims should be dismissed.

1. <u>Plaintiff's Claim Arising from Enumerated Unfair and Deceptive Trade Practices</u>

In the Complaint, Plaintiff alleges that Defendants have committed five prohibited practices enumerated in § 58-63-15(11). *Compare* (ECF No. 4 ¶¶ 96(a)–(e)), *with* N.C. Gen. Stat. §§ 58-63-15(11)(a),(b),(f),(m),(n). Specifically, the Complaint alleges that Defendants have committed the following unfair claim settlement practices: "(a) Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue"; "(b) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies"; "(c) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear"; "(d) Failing to promptly settle claims where liability has become reasonably clear under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage"; and "(e) Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement." (ECF No. 4 ¶¶ 96(a)–(e).)[5]

Defendants contend that Plaintiff has failed to state a plausible claim arising under any of these enumerated unfair claim settlement practices. (ECF No. 10 at 16.) Specifically, Defendants challenge the factual sufficiency of the allegations supporting practices (c) and (d);

---

[5] The Complaint does not identify which specific, factual allegations support each enumerated unfair claim settlement practice, but rather, in pleading this cause of action, the Complaint incorporates the factual allegations set forth earlier in the Complaint. (ECF No. 4 ¶¶ 91–100.)

Defendants challenge practice (a) on the ground that Plaintiff has failed to allege that it "detrimentally relied" on the prohibited practice; and Defendants challenge practices (b) and (e) on the grounds that they are unsupported by plausible factual allegations and that Plaintiff has failed to allege that it sustained actual damages as the proximate result of these prohibited practices. (*Id.* at 16–18.)

The North Carolina General Statutes provide that: "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. Gen. Stat. § 75-1.1(a). Further, a separate statute creates a private right of action that "allows any individual who has been 'injured by reason of any act or thing done by any other person, firm or corporation in violation of the provisions of this Chapter' to bring a civil action." *Bumpers v. Cmty. Bank of N. Va.*, 747 S.E.2d 220, 226 (N.C. 2013) (quoting N.C. Gen. Stat. § 75-16). To state a prima facie claim for unfair or deceptive trade practices under North Carolina law, "a plaintiff must show: (1) [the] defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to plaintiff." *Id.* (alteration in original) (quoting *Dalton v. Camp*, 548 S.E.2d 704, 711 (N.C. 2001)). Section 58-63-15(11) of the North Carolina General Statutes enumerates certain practices "as unfair methods of competition and unfair and deceptive acts or practices in the business of insurance." *Id.* § 58-63-15. The North Carolina Supreme Court has held that these practices enumerated in § 58-63-15(11) are "unfair or deceptive acts or practices," which are prohibited under § 75-1.1(a). *Gray v. N.C. Ins. Underwriting Ass'n*, 529 S.E.2d 676, 683 (N.C. 2000). Thus, North Carolina law extends a

13

private right of action to an insured whose insurer has committed a prohibited practice enumerated in § 58-63-15(11). *See id.*

The Court concludes that Plaintiff has stated a plausible claim to relief on its unfair and deceptive trade practices claim arising from Defendants' alleged violation of certain offenses enumerated in § 58-63-15(11). Section 58-63-15(11)(f) defines one unfair claim settlement practice as "[n]ot attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear." § 58-63-15(11)(f). Plaintiff alleges that Defendants settled Mr. H's claim for an "excessive" amount, and Plaintiff further contends that Defendants' choice to settle for this "excessive" amount "was solely for the benefit of [Defendants] at the expense of [Plaintiff]." (ECF No. 4 ¶ 43.) This allegation is sufficient to plausibly allege that Defendants committed an unfair claim settlement practice by "[n]ot attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear" as set forth in § 58-63-15(11)(f). The Court, therefore, will deny Defendants' motion to dismiss Plaintiff's first claim for unfair and deceptive trade practices.

2. Plaintiff's General Unfair and Deceptive Trade Practices Claim

Defendants argue that Plaintiff has failed to state a plausible claim to relief for its fourth cause of action, a general unfair and deceptive trade practices claim arising under N.C. Gen. Stat. § 75-1.1. (ECF No. 10 at 18–20.) Defendants contend that "the Complaint does not allege 'substantial aggravating circumstances,' such as forgery, ongoing deception, or fraudulent inducement, to sustain a UDTPA claim. . . . Moreover, EAIC's exercise of its

14

contractual rights to settle worker's compensation claims and draw on the [Letter of Credit] cannot form the basis of a UDTPA claim." (*Id.* at 18–19 (citation omitted).)

The Court concludes that Plaintiff has stated a claim to relief with respect to its fourth cause of action, the general unfair and deceptive trade practices claim. Under North Carolina law, a plaintiff may state a claim for unfair and deceptive trade practices under § 75-1.1 by alleging that a defendant committed an unfair claim settlement practice enumerated in § 58-63-15(11). *See Gray*, 529 S.E.2d at 683. As the North Carolina Supreme Court has explained: "An insurance company that engages in the act or practice of '[n]ot attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear,' also engages in conduct that embodies the broader standards of . . . § 75-1.1 because such conduct is inherently unfair, unscrupulous, immoral, and injurious to consumers." *Id.* (quoting N.C. Gen. Stat. § 58-63-15(11)(f)). "Thus, such conduct that violates subsection (f) of . . . § 58-63-15(11) constitutes a violation of . . . § 75-1.1, as a matter of law." *Id.* The Court has previously concluded that Plaintiff has stated a claim to relief arising from its allegation that Defendants have committed the unfair claims settlement practice enumerated in § 58-63-15(11)(f). Therefore, the Court concludes that Plaintiff has also stated a claim under § 75-1.1.

Defendants argue that Plaintiff cannot state a claim for unfair and deceptive trade practices under § 75-1.1 because "the Complaint's allegations reveal . . . at most, a potential breach of contract . . . [h]owever, the Complaint does not allege 'substantial aggravating circumstances,' . . . to sustain a UDTPA claim." (ECF No. 10 at 18–19 (citing *Griffith v. Glen Wood Co.*, 646 S.E.2d 550, 558–59 (N.C. Ct. App. 2007).) The case Defendants cite in support

15

of this argument makes clear that "substantial aggravating circumstances" are required to state a claim for unfair and deceptive trade practices when the basis for this claim is merely a breach of contract. *See Griffith*, 646 S.E.2d at 558. The Court, however, has concluded that Plaintiff has stated a claim for unfair and deceptive trade practices under § 75-1.1 on the basis of its allegation that Defendants committed a prohibited practice enumerated in § 58-63-15(11)(f), not on the basis of a breach of contract. Therefore, the Court is unpersuaded by Defendants' argument that "substantial aggravating circumstances" must be present for Plaintiff to state a claim to relief. The Court will, accordingly, deny the motion to dismiss Plaintiff's second claim for unfair and deceptive trade practices.

### D. Whether Plaintiff's Claims Related to Mr. G. are Ripe

Defendants argue that Plaintiff's claims arising from the handling of Mr. G's claims are "not ripe or are legally insufficient." (ECF No. 10 at 20.) Defendants argue that Plaintiff's claims "based on EAIC's handling of Mr. G's claim are dependent on future contingencies and are not ripe for review." (*Id.*) Further, Defendants state: "Even if such claims were ripe, they are legally insufficient because any alleged injury is hypothetical or speculative." (*Id.*)

The Court cannot conclude that Plaintiff's claims arising from the handling of Mr. G's claim are unripe. In the Complaint, Plaintiff alleges that Defendants "failed to obtain a release and resignation from Mr. G." (ECF No. 4 ¶ 27.) This failure to obtain a release and resignation from Mr. G supplies the basis, at least in part, of all four causes of action in the Complaint. (*Id.* ¶¶ 86, 90, 99, 106.) Defendants contend that Plaintiff's claims related to Mr. G are unripe because, in the Complaint, Plaintiff alleges that "[d]ue to Mr. G's age and health, [Plaintiff] bears a heightened risk of future claims from Mr. G." (ECF No. 10 at 20 (quoting

16

ECF No. 4 ¶ 29) (emphasis removed).)  The Complaint, however, also alleges that Plaintiff has "sustained damages . . . due to . . . compensation paid to Mr. G as a result of [Defendants] not getting a release and resignation."  (ECF No. 4 ¶¶ 86, 90, 99, 106.)  Thus, Plaintiff alleges that it has already suffered harm resulting from Defendants' failure to obtain a release and resignation from Mr. G.  The Court, therefore, cannot conclude that Plaintiff's claims related to Mr. G are unripe because the harm suffered by Plaintiff is dependent on future contingencies.  For the same reasons, nor can the Court agree with Defendants that Plaintiff's claims related to Mr. G are legally insufficient because "any alleged injury is hypothetical or speculative," (ECF No. 10 at 20).  Accordingly, the Court will deny the motion to dismiss Plaintiff's claims related to Mr. G.

## IV. CONCLUSION

The Court will (1) grant the motion to dismiss in part in that the Court will dismiss EAIG as a Defendant in this action, (2) direct the Clerk of Court to restyle the caption in this matter so that EAIG is properly reflected as a fictitious name under which EAIC, EAAC, and AEIC conducts business, and (3) dismiss the breach of contract claim as against EAAC and AEIC to the extent that the claim arises under the Policy.  The Court will deny the motion in all other respects.

**ORDER**

For the reasons discussed herein:

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss Plaintiff's Complaint is GRANTED IN PART AND DENIED IN PART.  The motion is GRANTED

in that all claims brought against EAIG are hereby DISMISSED and in that the breach of contract claim is DISMISSED as to EAAC and AEIC to the extent that the claim arises under the Policy. The motion is DENIED in all other respects.

IT IS FURTHER ORDERED that the Clerk of Court is directed to amend the caption in this matter so that the Defendants are listed as follows: "Eastern Alliance Insurance Company d/b/a Eastern Alliance Insurance Group, Eastern Advantage Assurance Company d/b/a Eastern Alliance Insurance Group, and Allied Eastern Indemnity Company d/b/a Eastern Alliance Insurance Group."

This, the 26th day of March, 2018.

/s/ Loretta C. Biggs
United States District Judge